WESTERN UNION TELEGRAPH COMPANY, Appellant, v. PACIFIC AND ATLANTIC TELEGRAPH COMPANY OF THE UNITED STATES et al., Respondents, et al., Defendants.

WESTERN UNION TELEGRAPH COMPANY, Appellant, v. SOUTHERN AND ATLANTIC TELEGRAPH COMPANY et al., Respondents, et al., Defendants.

WESTERN UNION TELEGRAPH COMPANY, Appellant, v. EMPIRE AND BAY STATES TELEGRAPH COMPANY et al., Respondents.

Argued October 14, 1947; decided November 20, 1947.

*John H. Waters, Francis R. Stark* and *Clarence W. Roberts* for appellant in first above-entitled action. I. The Court of

Appeals in *Johnson* v. *Western Union Tel. Co.* (293 N. Y. 379) did not intend to lay down the general rule that whenever a lease (a) is for a long term (b) and includes all the lessor's property (c) and provides that the rent shall be payable directly to the lessor's stockholders, but contains no covenant to pay taxes or to keep the property free from tax liens, the lessee is obligated to pay the Federal income taxes assessed against the lessor by reason of the rent paid to the stockholders. The " General Plan or Scheme " was referred to not as an independent ground of decision, but as the background for the construction of the express tax covenant. II. The general plan or scheme could not have been an independent ground of decision, for as defined in the majority opinion the general plan or scheme to which they referred included the tax covenant. That the tax covenant alone was the substantive ground of decision is clear from the fact that the court held that Western Union was obligated to pay not only the lessor's income taxes but all its debts. III. If the majority in the *Johnson* case intended to hold that even in the absence of any tax covenant the inclusive nature of the lease, its long term, and the method of payment of rent required the lessee to pay income taxes, such holding was unnecessary to the decision, is contrary to the uniform current of authority, and should not be extended to other cases such as those now at bar. (*United States* v. *Western Union Tel. Co.,* 50 F. 2d 102; *Harwood* v. *Eaton,* 68 F. 2d 12; *Commissioner* v. *Western Union Tel. Co.,* 68 F. 2d. 16, 292 U. S. 636; *United States* v. *Morris & Essex R. Co.,* 135 F. 2d 711, 320 U. S. 754; *Commissioner of Internal Rev.* v. *Western Union Tel. Co.,* 141 F. 2d, 774, 322 U. S. 751.) IV. The Court of Appeals did not overrule or disapprove *Brainard* v. *N. Y. C. R. R. Co.* (242 N. Y. 125). It qualified the holding in that case, which was to the effect that the lessee was not to be held liable for income taxes unless income taxes were mentioned by name, to the extent of holding that they need not be mentioned by name if some other express words were used which meant the same thing. (*United States* v. *Warren R. Co.,* 127 F. 2d 134.) V. The judgment cannot be sustained on the ground that the covenant to pay the rent " without deduction or abatement for taxes " or for any other purpose required lessee to pay the

income taxes. VI. The covenant to return the property in as good condition as when received, wear and tear excepted, relates to physical condition and not to incumbrances on the title.

*Arthur Garfield Hays, Osmond K. Fraenkel* and *Seymour M. Heilbron* for Abraham & Co. and others, respondents, in first above-entitled action. This case is governed by the decision of the Court of Appeals in *Johnson* v. *Western Union Tel. Co.* (293 N. Y. 379).

*William W. Owens* for Cobb & Co., respondent in first above-entitled action. The lease expressly requires plaintiff to bear Pacific's income taxes. (*Johnson* v. *Western Union Tel. Co.*, 293 N. Y. 379.)

*Ernst Lampé* and *Jesse Knight* for Isabella Home, respondent in first above-entitled action. The lease imposes a clear obligation on the lessee to pay Pacific's income taxes. (*Johnson* v. *Western Union Tel. Co.*, 293 N. Y. 379; *Central of Georgia Ry. Co.*, 47 F. Supp. 786; *Suter* v. *Jordan Marsh Co.*, 225 Mass. 34; *Boston & Providence R. R.* v. *Old Colony R. R.*, 269 Mass. 190; *Pittsfield & N. A. R. Corp.* v. *Boston & A. R. R.*, 260 Mass. 390; *European & North Am. Ry.* v. *Maine Central R. R.*, 135 Me. 338; *Van Rensselaer* v. *Dennison*, 8 Barb. 23; *Hoboken Mfrs. R. R. Co.* v. *Hoboken R. R.*, 133 N. J. Eq. 270; *Monongahela St. Ry.* v. *Phila. Co.*, 350 Pa. 603.)

*Alice Dillingham* for Anna Rochester, respondent in first above-entitled action. A covenant to pay "without any deduction or abatement for or on account of taxes or assessments or for any other purpose whatsoever" must mean what it says, that the promisor agrees to pay the taxes. (*Pittsfield & North Adams R. R. Co.* v. *Boston & Albany R. R. Co.*, 157 N. E. 611; *Johnson* v. *Western Union Tel. Co.*, 293 N. Y. 379; *Seymour* v. *Warren*, 179 N. Y. 1.

*Philip Novick* and *Nat C. Helman* for King & Co., respondent in first above-entitled action. The clause that there was to be no "deduction or abatement for or on account of taxes or for any purpose whatsoever " except only for " prior " debts outstanding when the lease was made is so all-inclusive as to

embrace every type of tax and every type of debt, with the sole exception of any debts outstanding when the lease was made. (*Johnson* v. *Western Union Tel. Co.*, 293 N. Y. 379.)

*M'Cready Sykes* for United States Trust Company of New York, respondent in first above-entitled action. The conclusive parallel between the present case and *Johnson* v. *Western Union Tel. Co.* (293 N. Y. 379) is that in neither case does the lease provide by affirmative covenant for payment by the lessee of the taxes in question and that in both cases liability is conclusively predicated on the necessary implication of a negative covenant. In both cases the lessee is required to maintain certain property free of any diminution that might otherwise be caused by the incidence of a tax. (*Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429, 158 U. S. 601; *Harbeck* v. *Pupin*, 145 N. Y. 70.)

*Ganson J. Baldwin* for Northwestern Telegraph Company, *amicus curiæ*, in support of respondents' position.

*John H. Waters, Francis R. Stark* and *Clarence W. Roberts* for appellant in second above-entitled action. I. Plaintiff lessee is not liable for the payment of Federal income taxes assessed against defendant lessor. II. The secondary relief prayed for, namely, a decree prescribing an equitable method for paying the income taxes, should be granted.

*Arthur Garfield Hays, Osmond K. Fraenkel* and *Seymour M. Heilbron* for public stockholders and others, respondents in second above-entitled action. This case is governed by the decision in *Johnson* v. *Western Union Tel. Co.* (293 N. Y. 379).

*Alice Dillingham* for Anna Rochester, respondent in second above-entitled action.

*John H. Waters, Francis R. Stark* and *Clarence W. Roberts* for appellant in third above-entitled action. I. Plaintiff lessee is not liable for the payment of Federal income taxes assessed against defendant lessor. (*Bowers* v. *Interborough Rapid Transit Co.*, 121 Misc. 250; *Commissioner of Internal Rev.* v. *Western Union Tel. Co.*, 141 F. 2d, 774, 322 U. S. 751; *United States* v. *Morris & Essex R. Co.*, 135 F. 2d 711, 320 U. S. 754; *Commissioner* v. *Western Union Tel. Co.*, 68 F. 2d 16.) II. The secondary relief prayed for, namely, a decree prescribing an

equitable method for paying the income taxes, should be granted. III. Liability in the *Johnson* case was based on the tax covenant and reference to the plan or scheme of the lease was for the purpose of supporting the court's construction of that covenant. The provisions of the lease in the *Johnson* case from which the court fashioned the "plan" are entirely unlike the provisions of the Empire lease from which the respondents would fashion a similar plan.

*Raymond M. White, Edgar W. Hatfield* and *John V. Browne* for Marion P. Fearons and others, respondents in the third above-entitled action. I. It was the intent of the parties as shown in the lease that Western Union was to discharge all obligations of Empire during the term of the leasehold including Federal income taxes assessed against Empire. (*Johnson* v. *Western Union Tel. Co.*, 293 N. Y. 379; *Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *Gold & Stock Tel. Co.* v. *Commissioner of Internal Revenue*, 83 F. 2d, 465; *United States* v. *Western Union Tel. Co.*, 50 F. 2d 102; *Western Union Tel. Co.* v. *Commissioner of Internal Revenue*, 68 F. 2d 16; *Commissioner of Internal Revenue* v. *Western Union Tel. Co.*, 141 F. 2d 774.) II. The general rule of construction of contracts supports the decision in the *Johnson* case. (*Empire Properties Corp.* v. *Manufacturers Trust Co.*, 288 N. Y. 244; *Paige* v. *Faure*, 229 N. Y. 114; *Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334; *People* v. *Gluck*, 188 N. Y. 167; *Heryford* v. *Davis*, 102 U. S. 235; 3 Williston on Contracts, § 618; *Boston & Providence R. R.* v. *Old Colony R. R.*, 269 Mass. 190; *Eastern Mass. St. Ry.* v. *Boston Elevated Ry.*, 310 Mass. 659; *Whitlock* v. *Boston & M. R. R.*, 29 F. 2d 351.) III. The parties have already construed the lease that Western Union is liable for the taxes of Empire. (*City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Brooklyn Public Library* v. *City of New York*, 250 N. Y. 495; *New York Central R. R. Co.* v. *New York & Harlem R. R. Co.*, 185 Misc. 420; *Grey* v. *Grey*, 47 N. Y. 552; *Leask* v. *Hoagland*, 205 N. Y. 171; *People ex rel. U. S. A. P. P. Co.* v. *Knight*, 174 N. Y. 475.) IV. The "loan agreement" between Western Union and Empire was properly declared null and void by the courts below. (*Johnson* v. *Western Union Tel. Co.*, 184 Misc. 728.)

*Alice Dillingham* for Anna Rochester, respondent in third above-entitled action.

DESMOND, J.  In the latter decades of the nineteenth century plaintiff Western Union Telegraph Company, absorbed into its own telegraph system a number of independent telegraph companies, formerly its competitors.  This absorption was accomplished through long term leasing of all the assets of its erstwhile competitors.  The lawyers and businessmen who made these arrangements, and drew the leases, devised covenants to take care of such contingencies as they could foresee, but, not being prophets, they did not forecast the high income taxes of the twentieth century.  When these imposts grew to important size, controversies arose as to whether, under the leases, the income tax on the rentals was an obligation of lessor or lessee.  In 1944, we answered that question, as to one such Western Union lease, in *Johnson* v. *Western Union Tel. Co.* (293 N. Y. 379, 383).  There we held that Western Union, by agreeing to keep that particular leased property " ' clear from all incumbrances arising from tax  *  *  *  liens ' " and to deliver it back at the end of the time " ' as free from  *  *  *  incumbrance thereon as they were, when received ' " had, without mentioning the lessor's income taxes, obligated itself to pay them.  In 1926, interpreting a railroad lease in *Brainard* v. *N. Y. C. R. R. Co.* (242 N. Y. 125, 129), this court had ruled that a covenant by the lessee to " ' pay all taxes and assessments which may be levied or become chargeable on the said road or property, or upon the said [lessor] Mahoning Company, by reason of its ownership thereof ' " described property taxes only and had no reference to income taxes.  Essentially, the question in the three cases now before us is whether the bargains as to taxes written into these three leases, are governed by the *Brainard* case (*supra*) or by the *Johnson* case (*supra*).

The *Pacific and Atlantic* lease was made in 1873 to run for 999 years, while the *Southern and Atlantic* and *Empire and Bay States* grants were for 99 years and were made in 1876 and 1890, respectively.  In all three agreements (as in the lease in the *Johnson* case, *supra*) the annual rental was to be a stated percentage of the owner corporation's outstanding capital stock, which amounts were to be paid direct to the lessor's stockholders, ratably in proportion to their holdings of stock.  In all four cases (*Johnson* and these three) the lessor corporation **was to be preserved as a mere shell without inner substance,**

the cost of such bare existence to be paid by Western Union. None of the three agreements in our present cases included any clause like the ones we construed in the Johnson case, binding lessee Western Union to keep the property free of tax liens and to hand it back with the title similarly unclouded.

The sole references to taxes in the three documents now before us are in an entirely different form. In the *Western Union* v. *Pacific and Atlantic* case plaintiff promised to pay the yearly accruals "without any deduction or abatement for or on account of taxes or assessments or for any other purpose whatsover" while in the other two writings (*Southern and Atlantic* and *Empire and Bay States* cases) the stated obligation of Western Union was to make the annual payments "without any deduction or abatement for or on account of taxes or assessments on the aforesaid demised property". (In the *Southern and Atlantic* lease the covenant goes on to say: "or for any other purpose whatsoever".) Those forms of words, whatever be their precise purpose, were certainly not promises by the lessee to pay all lessors' taxes, including their income taxes. They amount to no more than assurance that each stockholder will get his share of the rent, with nothing taken out by the lessee for taxes. Inferentially, those clauses, above quoted from these three leases, call upon the lessee to pay all property taxes on the demised telegraph systems. Such covenants, as held in the *Brainard* case (*supra*) and restated in the *Johnson* case (*supra*) do not include income taxes. The *Brainard* rule is still the law: "Unless the lease expressly provides for the payment of taxes on the income from rentals received under the lease, the imposition of such a burden on the lessee is not justified." (242 N. Y. at p. 132.) In the *Johnson* lease we found no mention of income taxes by name, but a promise to keep and return the telegraph line unspotted by tax liens, an undertaking which could not be performed unless the lessee paid the lessor's income taxes.

A careful examination of the other language in each of the three leases here under scrutiny brings to light nothing which could be treated as an engagement by the lessee to assume and pay lessors' own income taxes. No such meaning can be given to the recitals, in the preambles of the *Pacific and Atlantic* and

*Southern and Atlantic* writings: " Whereas the interests both of stockholders and of the public demand unity of action to the end that said stockholders may receive a proper return from their investment ". Nor are defendants in the *Empire and Bay States* case helped by the fact that Western Union agreed to, and did, indorse on each *Empire and Bay States* stock certificate a guarantee of the quarterly payment of 1% on the par value of the stock " subject to the terms and provisions of the lease ".

Special Term, while deciding the present cases in favor of defendants, came to the same conclusion as we do herein, as to the meaning of the several references to taxes in the three leases. The tax clauses here, held Special Term, were not sufficient, as the tax covenant was in the *Johnson* case (*supra*), to transfer the income tax obligation. But, said Special Term in these cases, this court in the *Johnson* case gave a separate and independent reason for construing the *Johnson* lease as requiring Western Union to pay its lessor's income taxes. In the *Johnson* case, according to the Special Term opinions in the present litigations, this court found Western Union's liability for the income taxes not only in the specific language as to taxes, but also in " the general plan of the contract." So, reasoned Special Term, while there is no " Johnson case " tax lien covenant in the three cases now before us, the " general plan " of these three grants is the same as the " general plan " of the *Johnson* contract, and the result therefore must be the same.

That was not the meaning of our opinion in *Johnson* v. *Western Union Tel. Co.* (*supra*). The majority opinion in that case grounded the income tax liability flatly on the clauses as to tax liens. We looked at and wrote about the " general plan of the contract " in the *Johnson* case only to show that the plain meaning of the tax clauses therein was not altered or affected by anything in the lease's " general plan ". The *Brainard* case's holding (*supra*), not overruled but reaffirmed in the *Johnson* case, was that such lessors must pay their own income taxes unless there be found forthright language whereby the lessee assumes that obligation. Such language was in the *Johnson* case lease. It is not in any of the three leases now before us.

Besides asking for a declaratory judgment that it need not pay these taxes in addition to the agreed rents — a declaration to which we hold it entitled — plaintiff demands a decree that it may, nevertheless, deduct lessor's income taxes, ratably, from the rental payments to lessor's stockholders, and pay them into the Federal Treasury, for the lessor's account. The reason plaintiff seeks this relief is that plaintiff is itself a substantial stockholder in each of the lessor corporations, and fears that it, as such stockholder, may in the end be compelled by the Treasury, to pay lessor's income taxes, or part of them, under a " transferee " theory (see *Commissioner of Internal Revenue* v. *Western Union Tel. Co.*, 141 F. 2d 774, certiorari denied 322 U. S. 751). Whether or not some such arrangement is to be ordered made, and what formula, if any, is to be used, is for Special Term to decide and the cases must be sent back for that purpose. On such retrial Special Term will pass also on plaintiff's prayer for an injunction.

It appears that in some past years Western Union has paid its lessors' income taxes, sometimes under stipulations that such payments should be regarded as advances by the lessee to the lessor. The courts below, responsive to a counterclaim, ordered those loan agreements cancelled. We hold those agreements valid. Since, as we conclude, Western Union was not bound as lessee to make any income tax payments, for the lessors, such payments could not amount to a " practical construction " of the lease, against the lessee (see *Brainard* case, *supra,* 242 N. Y. at p. 133).

In each case the judgments should be reversed, with costs to the appellant in all courts, and each case remitted to the Special Term for further proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., LEWIS, CONWAY, FULD and DYE, JJ., concur; THACHER, J., taking no part.

Judgment accordingly.